# United States District Court
# District of Massachusetts

MAURICE FELDER,
        Petitioner,

    v.                      CIVIL ACTION NO. 2010-10233-JLT

THOMAS DICKHAUT,
        Respondent.

## *REPORT AND RECOMMENDATION ON PETITION UNDER 28 U.S.C. § 2254 FOR A WRIT OF HABEAS CORPUS (#1)*

COLLINGS, U.S.M.J.

### I. Introduction

Maurice Felder ("Felder" or "petitioner") petitions for a writ of habeas corpus under 28 U.S.C. § 2254. A Massachusetts jury convicted Felder of, among other things, two counts of first-degree murder for the 1995 execution-style murder of two men--Tyrone Lewis, Jr. and Adrian White.

Felder originally filed his *pro se* Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus (#1) on February 8, 2010. On July 11, 2011, the district

court dismissed the petition without prejudice because the statute of limitations had not run, and Felder wished to exhaust additional claims in state court. (#23)  On August 16, 2012, Felder moved to reopen the case and to file an amended petition (##24, 26), which included the proposed amended Petition under 28 U.S.C. § 2254 (#26-1), the proposed Memorandum of Law in Support of Petition for Writ of Habeas Corpus, Pursuant to 28 U.S.C. § 2254 (Amended) (#26-2), and proposed exhibits (#26-3).  The Court allowed the motion on November 5, 2012.  (#29)  On November 20, 2012, the respondent filed an Answer to Amended Petition and Affirmative Defenses (#31), along with Respondent's Memorandum of Law in Opposition to Amended Petition for Writ of Habeas Corpus (#32).  In addition to the Supplemental Answer ("S.A.") (#11) originally filed on April 29, 2010, the respondent also filed Supplemental Answer Volume II (#33), and transcripts of the pertinent state court proceedings, including trial transcripts. (#34, Volumes 1-17) On December 10, 2012, Felder filed Petitioner's Reply to the Respondent's Memorandum of Law in Opposition to Amended Petition for Writ of Habeas Corpus. (#37)  The petition is ripe for disposition on the merits.

## II.  Background

## A. The Facts

The facts surrounding the murders for which Felder was convicted have been set out in the Massachusetts Supreme Judicial Court's opinion affirming Felder's conviction on direct appeal. *See Commonwealth v. Felder*, 455 Mass. 359, 916 N.E.2d 990 (2009). Both Felder and the respondent have repeated those facts in their filings verbatim. The following discussion presumes familiarity with those facts. Otherwise, the Court sets out the pertinent facts where necessary in the discussion section that follows.

## B. Proceedings in State Court

On February 26, 2007, a Massachusetts jury found Felder and two co-defendants guilty of murder in the first degree of Tyrone Lewis, Jr. ("Lewis") and Adrian White ("White"); armed robbery of Lewis; unlawful possession of a firearm; unlawful possession of ammunition; and use of a firearm during the commission of a felony. *See Felder*, 455 Mass. at 359-60, 916 N.E.2d at 992. The Massachusetts Supreme Judicial Court ("SJC") affirmed Felder's conviction over Felder's claims on appeal that the prosecution failed to comply with its discovery obligations to produce certain photographic evidence; that the prosecutor made improper remarks during closing argument; that the jury

instructions were flawed in various respects; and that the conviction for armed robbery of Lewis was duplicative of the felony-murder conviction.

Felder then sought federal habeas relief by filing a petition under 28 U.S.C. § 2254. Because Felder sought to assert certain unexhausted claims, the district court dismissed the petition without prejudice. Felder then filed a *pro se* motion for a new trial in Massachusetts state court under Mass. R. Crim. P. 30. In that motion, he asserted challenges to certain jury instructions, and also contended that the courtroom had been closed during jury selection in violation of the Sixth Amendment. (*See* S.A. at 303-327) On April 19, 2012, the state trial judge denied the motion. (S.A. 332) Felder filed a gatekeeper petition with the SJC pursuant to Mass. Gen. L. ch. 278, § 33E, which a single justice denied without discussion on July 16, 2012. (S.A. 334)

## III. *Analysis*

### A. Overview of Claims

In his amended petition, Felder asserts four grounds for relief: 1) the prosecution failed to disclose certain photographic evidence before it introduced the evidence at trial, and the trial judge erred in refusing to instruct the jury that the defendant had not received the evidence in advance (#26-1 at 4); 2)

4

the trial judge erred in failing to instruct the jury on the import of an agreement between the prosecution and a key witness (#26-1 at 4); 3) the prosecution made improper remarks during closing (#26-1 at 5); and 4) the defendant's convictions for both felony-murder and armed robbery are duplicative in violation of the Double Jeopardy Clause (#26-1 at 5). These grounds for relief correlate to the issues presented in Felder's direct appeal to the SJC. (*See* #11 at 12 to 13) In his memorandum of law, Felder asserts several additional grounds for relief, which correlate (generally) to the grounds raised in Felder's motion for post-conviction relief, filed in state court: 1) the trial judge incorrectly instructed the jury on "reasonable doubt" and trial and appellate counsel were ineffective in failing to object to the instruction (#26-2 at 11-16); 2) the trial judge erred in his felony-murder charge to the jury and trial and appellate counsel were ineffective in failing to object (#26-2 at 16-21); 3) the trial judge erred in instructing the jury on "joint venture" and trial and appellate counsel were ineffective in failing to object (#26-2 at 21-25); 4) the trial judge gave flawed instructions on the charge of armed robbery, and trial and appellate counsel were ineffective for failing to raise the claim previously (#26-2 at 26-28); and 5) trial counsel was ineffective for failing to object to the exclusion of

5

the defendant's family and friends and all spectators during the voir dire (#26-2 at 37-40).

The Court considers these claims below.

## B.  Standard of Review Governing Section 2254 Habeas Petitions

"[A] federal court may not issue a habeas petition 'with respect to any claim that was adjudicated on the merits in State court proceedings' unless the state court decision: 1) 'was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States' or 2) 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *McCambridge v. Hall,* 303 F.3d  24, 34 (1st Cir. 2002) (quoting 28 U.S.C. § 2254(d) (Supp. II 1996)).  A decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-413 (2000).  A decision represents an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing principle from [the Supreme Court's]

decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. An "unreasonable application" requires "some increment of incorrectness beyond error. . . . The increment need not necessarily be great, but it must be great enough to make the decision unreasonable in the independent and objective judgment of the federal court." *McCambridge*, 303 F.3d at 36 (internal quotations and citation omitted). The Supreme Court has explained that

> [t]his distinction creates a substantially higher threshold for obtaining relief than *de novo* review. AEDPA thus imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt.

*Renico v. Lett*, 559 U.S. 766, ___, 130 S. Ct. 1855, 1862 (2010) (internal quotation marks and citations omitted) (footnote omitted). Furthermore,

> [w]hen assessing whether a state court's application of federal law is unreasonable, 'the range of reasonable judgment can depend in part on the nature of the relevant rule' that the state court must apply. Because AEDPA authorizes federal courts to grant relief only when state courts act *unreasonably*, it follows that '[t]he more general the rule' at issue — and thus the greater the potential for reasoned disagreement among fair-minded judges —'the more leeway [state] courts have in reaching outcomes in case-by-case determinations.'

*Id.* at 1864 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004) (second and third alterations in original)).   *See also Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (where the federal standard is general, "a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard").

## C.  Analysis of the Claims

### 1.  Ground 1:  Trial court erred in refusing to instruct jury that the defendant had not received certain photographic evidence.

#### a.  Background facts

The following facts, derived from the SJC's opinion, are pertinent to this claim.  The prosecution's key witness at trial was Mark Young ("Young").  On the night of the murders, Felder and his two co-defendants had gone to Young's house in search of drugs.  Young called a friend, Lewis, and Lewis and White arrived with cocaine.  Felder and his co-defendants, who had guns, instructed Young, Lewis and White to strip down to their underwear; they then marched the three victims to the attic of Young's house, tied their arms behind their backs, and forced them to lay face down.  The SJC recounted the ensuing details as follows:

> At gunpoint, the defendants ordered the victims

to lie on the floor.  The defendants discussed whether to shoot the victims one at a time or simultaneously, deciding on simultaneous shootings. As the defendants started a 'countdown,' Lewis and White cried and begged for their lives, and Young prayed.  Lester aimed his gun at Young; Washington aimed his gun at Lewis; and the defendant aimed his gun at White. On the count of 'two,' Young turned his head and heard a gunshot, and on the count of 'three,' Young turned his head in Lewis's direction and heard more gunshots.  As Young turned his head, he felt heat from a bullet graze his left cheek.  He opened his eyes and saw that Lewis had been shot in the head.  For a moment, Young thought that he, himself, was dead and urinated on himself. On realizing that he was alive, he pretended that he was dead.

White got up and jumped over Young's body, running toward the stairs.  The defendants chased White, and Young heard more gunshots, followed by what sounded like footsteps running down the stairs. Young got up and realized that he was all right. Young thought Lewis, from his appearance, was unlikely to survive.  Young went to an attic window and saw two people getting into an automobile, but could not make out who those two people were.  He ran down the stairs and encountered White at the bottom.  White was still breathing and was making gurgling sounds. Young told him he would go for help.

Uncertain whether all three defendants had left, Young, still only in his underwear, escaped through a bathroom window.  Once through the window, Young stepped on top of the roof of the porch and then jumped to the ground.  He ran across the backyard and climbed over a fence into a neighbor's yard.  He ran onto Bristol Street, trying to get help from a woman in

9

> an automobile, but she did not want to help.  He then
> started knocking on the doors of homes.  At one home,
> an elderly couple answered, let Young inside their
> home, and telephoned the police.

*Felder*, 455 Mass. at 362-63, 916 N.E.2d at 994 (footnotes omitted).

At trial, two police officers testified that they had observed  footprints in the snow made by Young.  (*See* #34, S.A. Vol. 11: 92, 219-221)  During cross-examination of these two witnesses,  defense counsel sought to draw this testimony into question, in an apparent effort to suggest that the police were not as thorough as they might have been (because neither officer noted the footprints in police reports, and because no photographs were taken), and to question the veracity of Young's recounting of events.  At a certain juncture, during the prosecution's direct examination of an investigating detective, the prosecution sought to introduce photographs of the footprints, which revealed not only the footprints, but also that they had been marked with flags.  Indeed, the detective testified that the photographs revealed the toe marks in the snow, suggesting that Young had, indeed, escaped barefoot.

Defense counsel objected on the grounds that the prosecution had violated its discovery obligations by failing to produce the photographic evidence of the footprints.  The trial judge excluded the photographs, but gave

the prosecution the opportunity to establish that it had in fact produced the photographs.  At that point, defense counsel made the strategic decision to withdraw his objection and to introduce the photographic evidence on his own. In a later written motion, the defense asked the trial judge to inform the jury that the defendant had not seen the photographs before the prosecution sought to introduce them.  The trial judge ruled that there was no bad faith on the prosecution's part, that there was no prejudice to the defendant, and that any prejudice was cured by the defense's decision to introduce the photographic evidence.

### b.   The SJC's Resolution of the Issue

In his brief before the SJC, Felder argued among other things that the trial judge's decision not to instruct the jury that the defense received the photographic evidence late--only after cross-examining two police officers on the lack of any such evidence--amounted to a denial of the defendant's right to a fair trial under the federal constitution.  Felder argued that the defense had sought to cast doubt on Young's claim that he jumped out the window to seek help, and that the prosecution's late production of the photographic evidence essentially made the defense look foolish in its earlier questioning.

The SJC first concluded that there was no evidence that the prosecution

had violated its discovery obligation.  It further addressed the claim as follows:

> Here, it should be noted that the content of the photographs was not exculpatory and was cumulative of testimony from several police officers that there had been footprints in the snow in Young's backyard. The absence of such photographs would have served to support a claim that these officers (and Young) all lied under oath about the existence of the footprints or that the police investigation was inadequate on account of the failure of police to record evidence. By withdrawing his objection to the Commonwealth's admission of the photographs and offering the photographs in evidence, the defendant's trial counsel essentially made a decision to abandon such lines of defense in favor of a different strategy that involved using the photographs to impeach Detective McCain. Thus, it cannot be said that the defense was unable to make effective use of the photographs. See *id*. Further, because the Commonwealth was not permitted to admit the photographs, any potential prejudice to the defendant was mitigated. In view of these circumstances, the judge did not err in refusing to instruct the jury as the defendant had requested in his motion for sanctions.

*Felder*, 455 Mass. at 367, 916 N.E.2d at 997.

In his habeas petition, Felder claims that the SJC's decision amounted to an unreasonable application of federal law.  He invokes his constitutionally protected right to a fair trial, which arises under the Fourteenth Amendment's due process clause.  (#26-2 at 36)

The First Circuit has acknowledged that "a misbegotten evidentiary ruling that results in a fundamentally unfair trial may violate due process and, thus, ground federal habeas relief." *Coningford v. Rhode Island*, 640 F.3d 478, 484 (1st Cir.), *cert. denied*, 132 S. Ct. 426 (2011). But it has also noted the limitations of this principle: "To be a constitutional violation, a state evidentiary error must so infuse the trial with inflammatory prejudice that it renders a fair trial impossible." *Petrillo v. O'Neill*, 428 F.3d 41, 44 n.2 (1st Cir. 2005), *cert. denied*, 547 U.S. 1117 (2006); *see also Lyons v. Brady*, 666 F.3d 51, 56 (1st Cir. 2012)("in habeas context, relevant inquiry on appeal regarding evidentiary claim of error is 'whether any error rendered the trial so fundamentally unfair that it violated the Due Process Clause'") (quoting *Kater v. Maloney*, 459 F.3d 56, 64 (1st Cir. 2006), *cert. denied sub nom. Kater v. Dennehy*, 549 U.S. 1344 (2007)), *cert. denied*, 133 S. Ct. 1491 (2013). Here, the SJC found no underlying evidentiary error. And, because Felder has not identified any specific Supreme Court precedent governing the purported error here, the Court must conclude that the SJC's resolution of the claim did not amount to an unreasonable application of Felder's broad fair trial rights. *See Coningford*, 640 F.3d at 485 ("Because the Supreme Court has not laid down a governing rule

anent the admission of prior bad acts evidence, the broader fair-trial principle is the beacon by which we must steer."). As the SJC pointed out, defense counsel withdrew its objection; and defense counsel effectively argued in closing that the prosecution's failure to produce the photographic evidence through its earlier witnesses suggested a "sudden" production of evidence to buttress the prosecution's theory of the case. (*See* #34, S.A. Vol. 15 at 29) That is, defense counsel in closing argument used the failure of the police witnesses to account for the photographic evidence to suggest that the police either fabricated the evidence, or that the police investigation was molded by the theory of the case. Finally, the SJC further observed that the evidence was not exculpatory and was duplicative of the testimony of several witnesses.

In his reply brief, Felder invokes *Brady v. Maryland*, 373 U.S. 83 (1963). *Brady* is inapplicable here because, as the SJC noted, the evidence was not exculpatory. *Brady*, 373 U.S. at 87 ("suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment"). Further, the trial court and the SJC found that there was no evidence that the prosecution had violated a discovery obligation, and this factual determination is entitled to a presumption

of correctness.  *See* 28 U.S.C. § 2254(e)(1).

> ### 2. Ground 2: The Trial Judge violated Felder's right to a fair trial by refusing to instruct the jury that Young's agreement with the  prosecution "to tell the truth" should be viewed with caution

During his testimony, Young testified that he had entered into an agreement with the prosecution to tell the truth.  Massachusetts law provides that where a cooperating prosecution witness has entered into a written plea agreement in exchange for his or her testimony, a defendant may be entitled to a jury instruction stating that such a witness's testimony should be viewed cautiously.  *See Commonwealth v. Ciampa*, 406 Mass. 257, 263-64, 547 N.E.2d 314, 319-20 (1989).  The trial judge refused to so instruct the jury.  Felder contends that the refusal to deliver the *Ciampa* instruction amounted to an abridgement of his right to a fair trial.

The state argues that this claim is asserted as a violation of state law and so is not actionable under federal habeas principles.  Alternatively, the state argues that Felder has abandoned the claim by not raising it in his memorandum of law.  Assuming that Felder has not abandoned the claim, the Court nevertheless rejects it on its merits.  The claim fares no better than the claim asserted in Ground 1, as it depends on the broad fair-trial principle.  Here,

the SJC found no impropriety in the underlying state evidentiary ruling: it deemed *Ciampa* inapplicable because there was no written plea agreement at issue.  Thus, there was no state evidentiary error, and the Court cannot second-guess that determination.  *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions").  The circumstances at issue here did not "work a denial of the petitioner's constitutionally secured fair-trial right." *Coningford*, 640 F.3d at 485.

### 3.  Ground 3:  Prosecutor's remarks during closing statement

In Ground 3, Felder argues that the prosecution made a number of improper statements during her closing argument that violated Felder's due process rights.  The remarks he identifies are as follows:  "I have the burden of proof here and there are two young men dead." (#34, S.A. Vol. 10:93); "Let's look at the evidence, let's look at the truth, and let's leave Mark Young out of it." (#34, S.A. Vol. 10:95)  And, Felder faults the prosecutor's use of the words "smoke screen" several times during her closing argument. (#34, S.A. Vol. 10:109-110; 117; 125)

As the SJC found, trial counsel did not object to the prosecutor's

statements, and so on direct appeal the SJC reviewed the claim under the "substantial miscarriage of justice" standard. *See Felder*, 455 Mass. at 368, 916 N.E.2d at 997. (Indeed, Felder's brief before the SJC also recognized that this standard applied. *See* S.A. at 55) The respondent argues that in view of the SJC's conclusion that Felder's counsel failed to object at trial, Felder has procedurally defaulted this claim. *See, e.g., Janosky v. St. Amand*, 594 F.3d 39, 44 (1st Cir. 2010) ("Federal habeas review of a particular claim is precluded in circumstances in which a state prisoner has defaulted on that claim in state court by virtue of an independent and adequate state procedural rule.") (citing *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)). Under such circumstances, a federal court cannot address the claim "unless the habeas petitioner can demonstrate cause for the default and actual prejudice." *Id.*

The First Circuit has consistently held "that the Massachusetts requirement for contemporaneous objections is an independent and adequate state procedural ground, firmly established in the state's jurisprudence and regularly followed in its courts." *Id.* To be sure, the SJC conducted a merits analysis of Felder's claims under the miscarriage of justice standard, but "[t]his discretionary miscarriage-of-justice review does not amount to a waiver of the

17

state's contemporaneous objection rule." *Id.*     In response, Felder suggests that the contemporaneous objection rule is not consistently applied.  In view of the above, this argument lacks merit.   Otherwise, Felder contends that his trial counsel was ineffective in failing to object, and that counsel's ineffectiveness caused the default.  (*See* # 26-2 at 31; #37 at 4)

"[I]neffective assistance of counsel, so severe that it violates the Sixth Amendment, may constitute sufficient cause to excuse a procedural default as long as the petitioner exhausted his ineffective assistance claim in state court." *Janosky*, 594 F.3d at 44 (citing *Murray v. Carrier*, 477 U.S. 478, 488-89 (1986)).  The record establishes that Felder raised the ineffectiveness of trial counsel in his brief before the SJC.  (S.A. at 59)  Although the SJC appears not to have resolved this claim on the merits (and Felder has not addressed the standard of review that applies in these habeas proceedings), even under de novo review Felder has failed to demonstrate ineffective assistance of counsel as cause for his procedural default.  *Cf. Janosky*, 594 F.3d at 45 (bypassing standard of review question when an ineffectiveness claim is "nested within the cause-and-prejudice analysis").

Felder's assertion of ineffective assistance of counsel is governed by the

familiar standard set out in *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). To succeed on a Sixth Amendment claim of ineffective assistance of counsel, a defendant must establish that his "counsel's representation 'fell below an objective standard of reasonableness'" and that "'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Moreno-Espada v. United States*, 666 F.3d 60, 64 (1st Cir. 2012) (quoting *Padilla v. Kentucky*, 130 S. Ct. 1473, 1482 (2010) (further internal quotation marks and citation omitted). Under *Strickland*, "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. With regard to the performance aspect of the standard, "[t]here is a 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance,' and [a petitioner] 'must overcome the presumption that . . . the challenged action might be considered sound trial strategy.'" *Tevlin v. Spencer*, 621 F.3d 59, 66 (1st Cir. 2010) (quoting *Strickland*, 466 U.S. at 689) (further citation and internal quotation marks omitted) (third alteration in original). Accordingly, "a lawyer's performance is deficient under *Strickland* 'only where, given the facts known at the time, counsel's choice was so patently

unreasonable that no competent attorney would have made it.'" *Id.* (quoting *Knight v. Spencer*, 447 F.3d 6, 15 (1st Cir. 2006)).

Felder appears to contend that counsel was ineffective in failing to object to the prosecutor's remarks as violative of federal due process standards. Although Felder contends that there was "no sound trial strategy for counsel's complete failure to object to the multiple errors committed by the trial prosecutor" (#26-2 at 31) during closing, the Court disagrees with the underlying premise that the prosecutor's comments amounted to "blatant violations" (*id.*) of constitutional standards; it follows that trial counsel would not have been ineffective in failing to object to the statements.

Improper statements in closing argument violate a defendant's due process rights only if the statements "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). Here, the complained-of comments were isolated, and scarcely "blatant" violations of due process principles. As for the first statement, the Court agrees with the SJC's assessment that there was no prosecutorial misconduct because the statement "was a correct statement of law and the factual reference was grounded in the evidence." *Felder*, 455 Mass.

20

at 368, 916 N.E.2d at 998.  Trial counsel would not have been ineffective in failing to object to this statement.

As for the second statement, the Court rejects the argument that the prosecution improperly asked the jury to accept its position as "the truth."  As the First Circuit has explained: "The archetypal example of vouching is a prosecutor's claim that the witness should be believed because the prosecutor--a representative of the government--believes the witness (hence, the term 'vouching' as in 'vouching for'), and it has been extended to embrace other instances in which the prosecutor improperly asks the jury to accept the government's position on the ground that the government in general should be believed or should be assumed always to do the right thing."  *United States v. Figueroa-Encarnacion*, 343 F.3d 23, 28 (1st Cir. 2003), *cert. denied sub nom., Medina v. United States*, 540 U.S. 1140 (2004).  As the SJC observed, read in context, the statement sought to describe the evidence that would support a guilty verdict even putting aside Mark Young's testimony.  The remark was made as counter-argument to the defense's position that Mark Young had testified untruthfully.  And the reference to "the truth" was isolated and fleeting and cannot be said to have so infected the trial with unfairness as to make the

resulting conviction a denial of due process.  Thus, trial counsel would not have been ineffective in failing to assert a challenge.

Finally, the Court finds no prosecutorial misconduct in the prosecution's use of the words "smoke screen" in an effort to cast doubt on the defense's theory of the case.  Given that none of the complained-of remarks amounted to prosecutorial misconduct under due process principles, it follows that trial counsel was not ineffective in failing to object to the remarks.

If more were needed, the Court notes that Felder has not established that "'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Moreno-Espada,* 666 F.3d at 64 (internal quotation marks and citation omitted).  In addition to the strength of the evidence against Felder (including Young's testimony), the trial court gave the following curative instruction:

> If . . . in the course of final arguments – and arguments are helpful and appropriate and in this case very well done – but if in the course of final arguments either attorney gave you an impression as to how they think you ought to find the facts, or expressed their own personal opinions to you about the facts, or talked to you about things that you didn't recall from the testimony, then ignore it, because it's your collective memory of the testimony that controls.

(#34, S.A., Vol. 15 at 138)

In short, Felder has not established "cause" for the procedural default through a showing of trial counsel's alleged ineffectiveness.

### 4. Ground 4: Violation of Double Jeopardy Clause

Felder maintained that his conviction for first-degree felony-murder was duplicative of his conviction for armed robbery in violation of the double jeopardy clause of Fifth Amendment. Specifically, he invokes that portion of the clause that protects against "multiple punishments for the same offense." *Brown v. Ohio*, 432 U.S. 161, 165 (1977). He argues that the conviction for armed robbery must be vacated. (*See* #26-1 at 6)

The SJC disposed of the claim on the merits as follows:

> *Duplicative convictions.* There is no merit to the defendant's contention that the conviction of armed robbery of Lewis is duplicative of the conviction of Lewis's murder and must be vacated. While the indictment charging armed robbery of Lewis served as the predicate felony for the conviction of felony-murder in the first degree, the jury's verdict on the murder charge was independently supported under the additional theories of deliberate premeditation and extreme atrocity or cruelty. '[W]here, as here, the conviction of murder is based on a theory [or theories] in addition to the theory of felony-murder, the conviction of the underlying felony stands.' *Commonwealth v. Brum*, 441 Mass. 199, 200 n. 1, 804

23

> N.E.2d 902 (2004), citing *Commonwealth v. Pennellatore*, 392 Mass. 382, 390, 467 N.E.2d 820 (1984).

*Felder*, 455 Mass. at 370-71, 916 N.E.2d at 999-1000. Because the SJC addressed the federal claim on the merits, the deferential AEDPA standard of review applies.

The Court concludes that the SJC's resolution of the issue does not amount to an unreasonable application of federal law as determined by the Supreme Court. Here, the jury found Felder guilty on all three theories of murder in the first degree: by deliberate premeditation with malice aforethought, by extreme atrocity and cruelty, and by felony-murder. (*See* #34, Vol. 17 at 15) And while it is true that under Massachusetts law, "[o]rdinarily, a separate conviction of an underlying felony (here, armed robbery) would be duplicative of the felony-murder conviction," *Commonwealth v. Brum*, 441 Mass. 199, 200 n. 1, 804 N.E.2d 902, 904 n. 1 (2004), Felder ignores that the jury convicted him on two other theories of murder, either of which independently supported the murder conviction. As the First Circuit has explained, the double jeopardy clause "'does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended.'" *United States*

*v. Patel*, 370 F.3d 108, 114 (1st Cir. 2004) (quoting *Missouri v. Hunter*, 459 U.S. 359, 365 (1983)). So, double jeopardy analysis inquires whether the legislature has decided to impose multiple punishments for the same offense, and if so, it may permissibly do so. *See id.* (citing *Garrett v. United States*, 471 U.S. 773, 779 (1985)).

Here, it is not an unreasonable application of federal law for the SJC to have determined that the armed robbery conviction is not duplicative of the first-degree murder charge, where the jury necessarily also found both deliberate premeditation and extreme atrocity and cruelty, and where the Massachusetts legislature provides for conviction of first-degree murder on different theories. Armed robbery thus can, under the Massachusetts scheme, constitute a separate offense under these circumstances.

### 5. *Courtroom closure*

In Ground 5 of his petition, Felder contends that his trial counsel was ineffective in failing to object to the purported exclusion of his family and friends from the courtroom during the jury voir dire. Felder raised this issue for the first time in a motion for post-conviction relief; he contended that the purported courtroom closure violated his Sixth Amendment right to a public trial under the

clearly established law of *Waller v. Georgia*, 467 U.S. 39 (1984), and its progeny, and that his trial counsel was ineffective in failing to object to the closure.  The trial judge rejected the claims as follows: "I was the trial judge and remember the trial well.  Contrary to the defendant's assertions, the trial was never closed to the public."  (#34, S.A. at 332)  Felder appealed from the denial of the motion, and pursuant to Mass. Gen. L. ch. 278, § 33E, a single gatekeeper denied leave to appeal without discussion.

The respondent contends that Felder has procedurally defaulted the ineffective assistance of counsel claim because the SJC decided the claim based on an adequate and independent state ground, precluding federal habeas review. Under now-established First Circuit precedent, it appears that the respondent is correct.  Under the special procedures for dealing with Section 33 cases--capital cases such as this one--a defendant seeking post-conviction relief must pass through a gatekeeper: "a single judge acts as a gatekeeper to bar access to the full court on any issue that could have been raised at the time of direct appeal, unless (as a general rule) the relief is sought on a basis that is both new (in the sense of having been unavailable at the time of direct appeal) and substantial." *Mendes v. Brady*, 656 F.3d 126, 128 (1st Cir. 2011), *cert. denied*, 132 S. Ct. 1551

26

(2012).  The First Circuit has concluded that the "application of the new-and-substantial rule in Section 33E cases is an adequate and independent bar to collateral relief."  *Id.*  at 130 (footnote omitted).  Thus, because "the Single Justice's denial of further review is an independent and adequate state ground," *Costa v. Hall*, 673 F.3d 16, 19 (1st Cir. 2012), Felder is obliged to establish cause and prejudice for his procedural default.

Felder claims that his trial and appellate counsel were ineffective for failing to raise this issue, and that this ineffective assistance is cause for procedural default.   But because Felder "has procedurally defaulted his ineffective assistance of counsel claim[] in state court, he cannot simply rely on what is at the heart of the merits of those claims, the alleged ineffectiveness, to show cause for procedural default of the same claim[]."  *Costa*, 673 F.3d at 25. The factual basis for the underlying courtroom closure claim would have been known or knowable at the time of Felder's trial and appeal.  *See Costa*, 673 F.3d at 25.  As the First Circuit recently explained, under the "more searching" review conducted under Mass. Gen. L. ch. 278 § 33E (2000), the SJC can "entertain motions for a new trial (as for ineffective assistance) filed with it in the first instance" based on an expanded record.  *Mendes,* 656 F.3d at 129.

Since Felder was represented by new counsel on appeal, "he could have raised his claim and made his record while the direct appeal was pending." *Id.* at 130. Thus, Felder must establish that his appellate counsel was ineffective in failing to raise the ineffectiveness of trial claim when appellate counsel had the opportunity. *See Martinez v. Ryan*, 132 S. Ct. 1309, 1315 (2012) ("Inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial.").

Thus, the inquiry is whether "appointed counsel in the initial- review collateral proceeding, where the claim should have been raised, was ineffective under the standards of [Strickland]." *Id.* at 1318. The Supreme Court has explained:

> To overcome the default, a prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit.

*Id.*

Felder has made no developed effort to show that appellate counsel was ineffective in failing to raise the issue about trial counsel's purported

ineffectiveness, when appellate counsel could well have chosen as a matter of strategy not to raise the issue because the claim was unlikely to succeed on the merits. The Court notes that the trial judge in this case found that, contrary to Felder's assertions, "the trial was never closed to the public." For habeas purposes, this factual finding "shall be presumed to be correct," 28 U.S.C. § 2254(e)(1), unless Felder rebuts the presumption "by clear and convincing evidence," *id.* Although Felder points to a colloquy between the trial judge and the prosecution during the jury voir dire to suggest that the courtroom was closed, the transcript may be read to suggest that the trial court, in fact, did not close the courtroom. The other evidence, while lending some support to Felder's contention that the trial was closed during individual voir dire, was presented to the state trial judge who drew a contrary conclusion. Thus, if this factual finding stands, then Felder cannot show ineffectiveness of trial counsel. But the First Circuit has said that "[w]here the record evidence can be interpreted to support a different version, the case here, we must reject" a request to supplant the state court factual findings. *Companonio v. O'Brien*, 672 F.3d 101, 111 (1st Cir.), (internal quotations marks and citations omitted) *cert. denied*, 133 S. Ct. 197 (2012).

Furthermore, even assuming that the courtroom was closed during the voir dire, defense counsel may have had strategic reasons for not challenging the closure during voir dire. *See Horton v. Allen*, 370 F.3d 75, 82 (1ˢᵗ Cir. 2004) ("In some circumstances, defense counsel's interest in protecting the accused's right to a completely public trial may give way to other concerns, such as maximizing the accused's chance for obtaining a favorable jury composition.") *cert. denied*, 543 U.S. 1093 (2005).   The First Circuit has observed:

> [W]e think that competent defense counsel in this case could have reasonably concluded that even a successful Sixth Amendment challenge to the partial courtroom closure would have done little to increase the defense's chances of securing a not-guilty verdict. As such, an objectively reasonable defense counsel could have made the strategic decision to forego the Sixth Amendment objection in favor of conserving the defense's limited resources for other important issues. Rather than raising a complicated constitutional issue that might require briefing and a hearing while offering limited upside to the defendant, the defense counsel could have reasonably believed his client's interests would be best served by moving the trial along and focusing on the immediate task of jury selection.

*Bucci v. United States*, 662 F.3d 18, 32 (1ˢᵗ Cir. 2011), *cert. denied*, 133 S. Ct. 277 (2012) (counsel's actions not unreasonable where partial closure of courtroom occurred during voir dire).   Felder has not overcome the strong presumption that

appellate counsel chose to emphasize other issues where an ineffectiveness of trial counsel claim on this ground seemed insubstantial, given the deference accorded to trial counsel's strategic decisions.  It follows that Felder has not established the requisite cause and prejudice.

### 6.  Ground 6: Challenge to various jury instructions

Felder challenges the propriety of several jury instructions: the "reasonable doubt" instruction (#26-2 at 11-16); the felony murder instruction (#26-2 at 16-21); the "joint venture" instruction (#26-2 at 21-26); and the armed robbery instruction (#26-2 at 26-28).  Felder did not assert these grounds in his petition itself, but rather in his memorandum of law.  The respondent correctly notes that Felder has failed to comply with the rules governing petitions filed under section 2254 and moves to dismiss on this basis, *see Smiley v. Maloney*, No. 01-11648-GAO, 2003 WL 23327540, at *16, n. 39 (D. Mass. Oct. 31, 2003) ("[i]t is the petition for a writ of habeas corpus, not subsequently filed memorandum, which defines the claim for habeas relief"), *aff'd,* 422 F.3d 17 (1st Cir. 2005), but given the petitioner's *pro se* status, the Court prefers to address the claims on less technical grounds.  *Cf. Scoggins v. Hall*, No. 04-10814-PBS, 2011 WL 3665425, at *18 (D. Mass. Jun. 1, 2011), *report and recommendation adopted*, 2011 WL

4395801 (D. Mass. Aug. 19, 2011).

The respondent's second argument--that the petitioner has procedurally defaulted these claims-is well taken.  Felder raised these various challenges for the first time in his motion for post-conviction relief, and a single justice denied the gatekeeper petition pursuant to Mass. Gen. L. c. 278, § 33E, without discussion.  For the reasons stated above, Felder has procedurally defaulted these claims (indeed, has doubly defaulted as trial counsel did not lodge a contemporaneous objection, and appellate counsel did not raise challenges on appeal), and can only garner federal habeas review on a showing of cause and prejudice.

As for each of the jury-instruction claims, Felder adds an accompanying ineffective assistance of trial and appellate counsel claim, thereby apparently seeking to assert "cause" for the default.  The problem for Felder, though, is that he has also procedurally defaulted the layered ineffective assistance of counsel claim, by not raising it previously under the "more searching" review conducted under Mass. Gen. L. ch. 278, § 33E, which permits the SJC "to entertain motions for a new trial (as for ineffective assistance) filed with it in the first instance" based on an expanded record.  *Mendes*, 656 F.3d at 129.  Any viable challenge

to the jury instructions would have been known and available to appellate counsel. Because Felder was represented by new counsel on appeal, "he could have raised his claim and made his record while the direct appeal was pending." *Id.* at 130.[1]   But Felder has made no effort to overcome the presumption that appellate counsel determined as a matter of strategy not to raise an ineffective-assistance-of-trial-counsel claim based on trial counsel's failure to object to the jury instructions. Appellate counsel could have concluded that any defects in the jury instructions, particularly when embedded in a claim of ineffectiveness of trial counsel, were not stronger than other claims that were presented on appeal. *Cf. Smith v. Robbins*, 528 U.S. 259, 288 (2000) ("appellate counsel . . . need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal"). For example, although Felder complains about the trial court's use of the phrase "moral certainty" in the instruction on "reasonable doubt," that phrase does not necessarily render a "reasonable doubt" instruction infirm: "When placed in its proper context, use of 'moral certainty' language is not necessarily unreasonable

---

[1] *Trevino v. Thaler*, 133 S. Ct. 1911 (2013), has further examined the circumstances under which ineffectiveness of counsel during collateral review proceedings can serve as "cause" to excuse a procedural default. In view of the First Circuit's opinion in *Mendes v. Brady*, 656 F.3d 126, 129 (1st Cir. 2011), *Trevino* does not alter the analysis here, because the Court assumes, as above, that Felder can attempt to overcome the procedural default with a showing of cause and prejudice.

under United States Supreme Court case law.  When 'the rest of the instruction

. . . lends context to the phrase' and emphasizes that the jurors must weigh the

evidence in the case, it accurately conveys the meaning of reasonable doubt."

*Exilhomme v. Spencer*, CIV.A. 08-10552-DPW, 2011 WL 3759219, at *9 (D. Mass.

Aug. 24, 2011) (quoting *Victor v. Nebraska*, 511 U.S. 1, 16 (1994)).  Here, the

trial judge repeated the instruction verbatim from *Commonwealth v. Webster*, 59

Mass. 295 (1850), an instruction that is commonly used in Massachusetts.  *See*

*id.*  Appellate counsel could well have concluded that it made little sense to

challenge an instruction that substantially complied with the Massachusetts

instruction on reasonable doubt.  Felder has not shown that no competent

appellate lawyer would have reasonably failed to raise the ineffectiveness of trial

counsel claim.  *See Lynch v. Ficco*, 438 F.3d 35, 49 (1st Cir.), *cert. denied,* 549

U.S. 892 (2006).

Finally, and perhaps most important, Felder has made no effort to show

that he was actually prejudiced by the purported errors.  In the context of "cause

and prejudice," Felder must show "'not merely that the errors . . . created a

*possibility* of prejudice, but that they worked to his *actual* and substantial

disadvantage, infecting his entire trial with error of constitutional dimensions.'"

34

*Costa*, 673 F.3d at 26 (quoting *Murray*, 477 U.S. at 494). Appellate counsel's failure to raise the ineffectiveness of trial counsel issue is exceedingly unlikely to have altered the result of the proceedings.

## IV. Recommendation

For all the above reasons, the Court recommends that the petitioner's Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus (#1) be DISMISSED and that Final Judgment enter for the respondent.

## V. Review by the District Judge

The parties are hereby advised that any party who objects to these recommendations must file a specific written objection thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the recommendations, or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b), Fed. R. Civ. P., shall preclude further appellate review. *See Keating v. Secretary of Health and Human Services*, 848 F.2d 271 (1st Cir. 1988); *United States v. Emiliano Valencia-Copete*, 792 F.2d 4 (1st Cir. 1986); *Scott v. Schweiker*,

702 F.2d 13, 14 (1st Cir. 1983); *United States v. Vega*, 678 F.2d 376, 378-379 (1st

Cir. 1982); *Park Motor Mart, Inc. v. Ford Motor Co.,* 616 F.2d 603 (1st Cir. 1980);

*see also Thomas v. Arn*, 474 U.S. 140 (1985).

/s/ *Robert B. Collings*

ROBERT B. COLLINGS
United States Magistrate Judge

August 26, 2013.